# NO. 23-1949

In The

# United States Court Of Appeals
## For The Fourth Circuit

**RAY KIFER, JR,**

*Plaintiff - Appellee,*

**v.**

**HARRY B. CROW, JR.,**
**as Administrator of the Estate of Landric Reid;**
**DAVID SPENCER, in his individual capacity;**
**KYLE BEAM, in his individual capacity;**
**JOSH BEAM, in his individual capacity;**
**JIMMY WILLIAMS, in his individual capacity,**

*Defendants - Appellants.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA AT CHARLOTTE**

———————————

## BRIEF OF APPELLANTS

———————————

Sean F. Perrin
Michael A. Ingersoll (on Brief)
WOMBLE BOND DICKINSON (US) LLP
1 Wells Fargo Center
301 S. College Street
Suite 3500
Charlotte, NC  28202
(704) 331-4992

*Counsel for Appellants*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. <u>23-1949</u>        Caption: <u>RAY KIFER JR. V. HARRY B. CROW, JR AS ADMINSTRATOR, ET. AL.</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>JOSH BEAM</u>
(name of party/amicus)

_____

 who is _____APPELLANT_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.     Is party/amicus a publicly held corporation or other publicly held entity?     ☐YES ☑NO


2.     Does party/amicus have any parent corporations?     ☐YES ☑NO
       If yes, identify all parent corporations, including all generations of parent corporations:


3.     Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?     ☐YES ☑NO
       If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?  ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☐NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐YES ☐NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?  ☐YES ☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: S/ SEAN F. PERRIN _____    Date: ____9/26/23____

Counsel for: APPELLANTS _____

- 2 -

Print to PDF for Filing

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __23-1949__       Caption: __RAY KIFER JR. V. HARRY B. CROW, JR AS ADMINSTRATOR, ET. AL.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__KYLE BEAM__
(name of party/amicus)

_____

 who is _____APPELLANT_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.     Is party/amicus a publicly held corporation or other publicly held entity?     ☐YES ☑NO


2.     Does party/amicus have any parent corporations?     ☐YES ☑NO
       If yes, identify all parent corporations, including all generations of parent corporations:




3.     Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?     ☐YES ☑NO
       If yes, identify all such owners:

4.   Is there any other publicly held corporation or other publicly held entity that has a direct
     financial interest in the outcome of the litigation?                    ☐YES ☑NO
     If yes, identify entity and nature of interest:

5.   Is party a trade association? (amici curiae do not complete this question)    ☐YES ☐NO
     If yes, identify any publicly held member whose stock or equity value could be affected
     substantially by the outcome of the proceeding or whose claims the trade association is
     pursuing in a representative capacity, or state that there is no such member:

6.   Does this case arise out of a bankruptcy proceeding?                    ☐YES ☐NO
     If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
     party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
     caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
     corporation that owns 10% or more of the stock of the debtor.

7.   Is this a criminal case in which there was an organizational victim?    ☐YES ☑NO
     If yes, the United States, absent good cause shown, must list (1) each organizational
     victim of the criminal activity and (2) if an organizational victim is a corporation, the
     parent corporation and any publicly held corporation that owns 10% or more of the stock
     of victim, to the extent that information can be obtained through due diligence.

Signature: S/ SEAN F. PERRIN                    Date:        9/26/23

Counsel for: APPELLANTS

- 2 -

Print to PDF for Filing

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. __23-1949__      Caption: __RAY KIFER JR. V. HARRY B. CROW, JR AS ADMINSTRATOR, ET. AL.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__HARRY B. CROW, JR. AS ADMINISTRATOR OF THE ESTATE OF LANDRIC REID__
(name of party/amicus)

_____

 who is _____APPELLANT_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.      Is party/amicus a publicly held corporation or other publicly held entity?      ☐YES ☑NO


2.      Does party/amicus have any parent corporations?      ☐YES ☑NO
        If yes, identify all parent corporations, including all generations of parent corporations:


3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?      ☐YES ☑NO
        If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct
      financial interest in the outcome of the litigation?                    ☐YES ☑NO
      If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)   ☐YES ☐NO
      If yes, identify any publicly held member whose stock or equity value could be affected
      substantially by the outcome of the proceeding or whose claims the trade association is
      pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?                     ☐YES ☐NO
      If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
      party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
      caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
      corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?     ☐YES ☑NO
      If yes, the United States, absent good cause shown, must list (1) each organizational
      victim of the criminal activity and (2) if an organizational victim is a corporation, the
      parent corporation and any publicly held corporation that owns 10% or more of the stock
      of victim, to the extent that information can be obtained through due diligence.

Signature: S/ SEAN F. PERRIN                              Date:        9/26/23

Counsel for: APPELLANTS

- 2 -

[Print to PDF for Filing]

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 23-1949          Caption: RAY KIFER JR. V. HARRY B. CROW, JR AS ADMINSTRATOR, ET. AL.

Pursuant to FRAP 26.1 and Local Rule 26.1,

DAVID SPENCER
(name of party/amicus)

who is _____ APPELLANT _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?   ☐YES ☑NO

2.    Does party/amicus have any parent corporations?                              ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
      other publicly held entity?                                                  ☐YES ☑NO
      If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct
    financial interest in the outcome of the litigation?  ☐ YES ☑ NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐ YES ☐ NO
    If yes, identify any publicly held member whose stock or equity value could be affected
    substantially by the outcome of the proceeding or whose claims the trade association is
    pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐ YES ☐ NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
    party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
    caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
    corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?  ☐ YES ☑ NO
    If yes, the United States, absent good cause shown, must list (1) each organizational
    victim of the criminal activity and (2) if an organizational victim is a corporation, the
    parent corporation and any publicly held corporation that owns 10% or more of the stock
    of victim, to the extent that information can be obtained through due diligence.

Signature: S/ SEAN F. PERRIN                    Date:        9/26/23

Counsel for: APPELLANTS

Print to PDF for Filing

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __23-1949__    Caption: __RAY KIFER JR. V. HARRY B. CROW, JR AS ADMINSTRATOR, ET. AL.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__JIMMY WILLIAMS__
(name of party/amicus)

_____

 who is _____APPELLANT_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO

2.    Does party/amicus have any parent corporations?    ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
      other publicly held entity?    ☐YES ☑NO
      If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct
    financial interest in the outcome of the litigation?          ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)     ☐YES ☐NO
    If yes, identify any publicly held member whose stock or equity value could be affected
    substantially by the outcome of the proceeding or whose claims the trade association is
    pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?          ☐YES ☐NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
    party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
    caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
    corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?     ☐YES ☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational
    victim of the criminal activity and (2) if an organizational victim is a corporation, the
    parent corporation and any publicly held corporation that owns 10% or more of the stock
    of victim, to the extent that information can be obtained through due diligence.

Signature: S/ SEAN F. PERRIN                          Date:        9/26/23

Counsel for: APPELLANTS

- 2 -

Print to PDF for Filing

# **TABLE OF CONTENTS**

DISCLOSURE STATEMENTS

TABLE OF AUTHORITIES ..................................................................iii

STATEMENT OF SUBJECT MATTER JURISDICTION ...................... 1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ...................... 1

STATEMENT OF THE CASE ................................................................ 2

       Statement of Facts .......................................................... 5

SUMMARY OF ARGUMENT ............................................................. 13

STANDARD OF REVIEW................................................................... 15

ARGUMENT ....................................................................................... 16

I.     THIS COURT HAS JURISDICTION OVER THIS APPEAL ....... 16

II.    DEFENDANTS ARE ENTITLED TO QUALIFIED
      IMMUNITY BECAUSE THEIR ACTIONS DID NOT
      VIOLATE THE FOURTH OR FOURTEENTH
      AMENDMENTS, OR ALTERNATIVELY BECAUSE
      REASONABLE OFFICERS IN THE SAME
      CIRCUMSTANCES COULD HAVE BELIEVED THAT
      THEIR ACTIONS WERE LAWFUL............................................ 18

      A.    OVERVIEW OF QUALIFIED IMMUNITY ........................ 18

      B.    PLAINTIFF'S SECTION 1983 UNLAWFUL ARREST
           CLAIM FAILS BECAUSE DEFENDANTS HAD
           PROBABLE CAUSE TO ARREST PLAINTIFF. ................ 22

           1.    DAVID SPENCER AND KYLE BEAM HAD
               PROBABLE CAUSE TO ARREST PLAINTIFF. ........ 25

2.    JOSH BEAM AND JIMMY WILLIAMS HAD PROBABLE CAUSE TO TRANSPORT PLAINTIFF TO THE STATION AND INTERVIEW HIM...........................................29

C.    ASSUMING ARGUENDO THAT PLAINTIFF'S CONSTITUTIONAL RIGHTS WERE VIOLATED. THE INDIVIDUAL DEFENDANTS ARE NEVERTHELESS ENTITLED TO QUALIFIED IMMUNITY BECAUSE IT WOULD NOT HAVE BEEN CLEAR TO A REASONABLE OFFICER THAT THE DEFENDANTS' CONDUCT WAS UNLAWFUL ...........................................32

1.    DEFENDANTS HAD AT LEAST ARGUABLE PROBABLE CAUSE TO ARREST PLAINTIFF. ........32

2.    DEFENDANTS DID NOT VIOLATE CLEARLY ESTABLISHED LAW ...............................35

D.    PLAINTIFF'S SECTION 1983 FAILURE TO INTERVENE CLAIM AGAINST JOSH BEAM AND JIMMY WILLIAMS SHOULD BE DISMISSED BECAUSE THERE WAS NO CONSTITUTIONAL VIOLATION. ...........................................40

1.    DEFENDANTS DID NOT VIOLATE CLEARLY ESTABLISHED LAW ...............................47

III.    DEFENDANTS ARE ENTITLED TO PUBLIC OFFICIAL IMMUNITY ON PLAINTIFF'S STATE LAW CLAIMS...............49

CONCLUSION ...........................................51

REQUEST FOR ORAL ARGUMENT ...........................................51

CERTIFICATE OF COMPLIANCE...........................................52

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Acosta v. Ames Department Stores, Inc.*,
    386 F.3d 5  (1st Cir. 2004)..............................................................24

*Adams v. Ferguson*,
    884 F.3d. 219 (2018) ....................................................................16

*Anderson v. Creighton*,
    483 U.S. 635, 107 S. Ct. 3034 (1987) .......................... 19, 21, 28, 37

*Ashcroft v. al-Kidd*,
    563 U.S. 731, 131 S. Ct. 2074 (2011) ................................ 19, 21, 37

*Bailey v. Kennedy*,
    349 F.3d 731 (4th Cir. 2003) ...................................................1, 50

*Baker v. McCollan*,
    443 U.S. 137, 99 S. Ct. 2689 (1979) ..............................................24

*Bell v. Dawson*,
    144 F.Supp.2d 454 (W.D.N.C. 2001) .............................................51

*Betton v. Belue*,
    942 F.3d 184 (4th Cir. 2019) ........................................................36

*Booker v. S.C. Dep't of Corr.*,
    855 F.3d 533 (4th Cir. 2017) ........................................................19

*Brooks v. Johnson*,
    924 F.3d 104  (4th Cir. 2019) .......................................................40

*Brown v. Gilmore*,
    278 F.3d 362  (4th Cir. 2002) .......................................................25

*Burley v. Baltimore Police Dep't*,
    422 F. Supp. 3d 986  (D. Md. 2019)....................................41, 43, 46

*Calloway v. Lokey,*
    948 F.3d 194 (4th Cir. 2020) ....................................................... 15

*Calvi v. Knox Cnty.,*
    470 F.3d 422  (1st Cir. 2006) ..................................................... 42

*Cooper v. Sheehan,*
    735 F.3d 153 (4th Cir. 2013) .................................................. 1, 51

*Crawford-El v. Britton,*
    523 U.S. 574, 118 S. Ct. 1584 (1998) ............................................ 18

*District of Columbia  v. Wesby,*
    583 U.S. 48, 138 S. Ct. 577 (2018) ...........................................22,39

*Doe v. Broderick,*
    225 F.3d 440  (4th Cir. 2000) ..................................................... 21

*Fernandes v. Montgomery Cnty.,*
    No. 10-cv-752, 2012 WL 1664086 (D. Md. May 10, 2012) ............ 30

*Gomez v. Atkins,*
    296 F.3d 253 (4th Cir. 2002) ................................................. 26, 33

*Grad v. Kaasa,*
    312 N.C. 310, 321 S.E.2d 888 (1984) ............................................ 49

*Graham v. Connor,*
    490 U.S. 386, 109 S. Ct. 1865 (1989) ...................................... 20, 22

*Halcomb v. Ravenell,*
    992 F.3d 316 (4th Cir. 2021) ....................................................... 15

*Henry v. Purnell,*
    501 F.3d 374 (4th Cir. 2007) ....................................................... 18

*Hernandez v. City of Napa,*
    No. C-09-02782 EDL, 2010 WL 4010030
    (N.D. Cal. Oct. 13, 2010) ............................................................. 44

iv

*Hicks v. Ferreyra,*
    965 F.3d 302 (4th Cir. 2020) ........................................................17

*Holmes v. Kucynda,*
    321 F.3d 1069 (11th Cir. 2003) ...................................................33

*Holmes v. Village of Hoffman Estates,*
    511 F.3d 673 (7th Cir. 2007) .......................................................30

*Humphrey v. Staszak,*
    148 F.3d 719 (7th Cir. 1998) .......................................................33

*Jackson v. Holley,*
    666 F. App'x 242 (4th Cir. 2016) .................................................17

*Keil v. Triveline,*
    661 F.3d 981 (8th Cir. 2011) .......................................................33

*Kisela v. Hughes,*
    584 U.S. --, 138 S. Ct. 1148 (2018) .............................................36

*Lea v. Kriby,*
    171 F. Supp. 2d 579 (M.D.N.C. 2001),
    aff'd, 39 Fed. Appx. 901 (4th Cir. 2002) .....................................50

*Lucky v. City of New York,*
    No. 03 Civ. 1983 (DLC), 2004 WL 2088557
    (S.D.N.Y. Sept. 20, 2004) ...........................................................44

*Machie v. Manger,*
    No. 09-CV-2196-AW, 2013 WL 12246343
    (D. Md. Sept. 10, 2013).................................................................43

*Malley v. Briggs,*
    475 U.S. 335, 106 S. Ct. 1092 (1988) .....................................32, 33

*Martin v. Mendoza,*
    230 F. Supp. 2d 665 (D. Md. 2002)..............................................35

*McKinney v. Richland Cnty.*,
      431 F.3d 415 (4th Cir. 2005) ......................................................28

*McVey v. Stacy*,
      157 F.3d 271 (4th Cir. 1998) ......................................................17

*Messick v. Catawba County*,
      110 N.C. App. 707, 431 S.E.2d 489 (1993) .................................49

*Michigan v. DeFillippo*,
      443 U.S. 31, 99 S. Ct. 2627 (1979) .............................................25

*Mitchell v. Forsyth*,
      472 U.S. 511, 105 S. Ct. 2806 (1985) .........................................16

*Monell v. Department of Social Services of the City of New York*,
      436 U.S. 658, 98 S. Ct. 2018 (1978) ..........................................3, 4

*Mullenix v. Luna*,
      577 U.S. 7, 136 S. Ct. 305 (2015) ...............................................36

*Orem v. Gilmore*,
      813 Fed. App'x 90 (4th Cir. 2020) ..............................................34

*Ornelas v. United States*,
      517 U.S. 690, 116 S. Ct. 1657 (1996) .........................................22

*Park v. Shiflett*,
      250 F.3d 843 (4th Cir. 2001) ......................................................25

*Pearson v. Callahan*,
      555 U.S. 223, 129 S. Ct. 808 (2009) ......................................20, 36

*Porterfield v. Lott*,
      156 F.3d 563 (4th Cir. 1998).................................................23, 33

*Pritchett v. Alford*,
      973 F.2d 307 (4th Cir. 1992) ......................................................17

*Randall v. Prince George's County*,
      302 F.3d 188 (4th Cir. 2002) .............................................40, 42, 46

*Ray v. Roane,*
  948 F.3d 222 (4th Cir. 2020) ....................................................... 17

*Reynolds v. Jamison,*
  488 F.3d 756 (7th Cir. 2007) ....................................................... 26

*Ridpath v. Board of Governors Marshall Univ.,*
  447 F.3d 292 (4th Cir. 2006) ....................................................... 19

*Rowland v. Perry,*
  41 F.3d. 167 (4th Cir. 1994) ........................................................ 28

*Saucier v. Katz,*
  533 U.S. 194, 121 S. Ct. 2151 (2001) ................................. 18, 20, 32

*Schoonover v. Clay Cnty. Sheriff's Dep't,*
  No. 20-1680, 2023 WL 4026091 (4th Cir. June 15, 2023) ............. 39

*Slattery v. Rizzo,*
  939 F.2d 213 (4h Cir. 1991) ........................................................ 21

*Smith v. Hefner,*
  235 N.C. 1, 68 S.E.2d 783 (1952) ................................................ 49

*Smith v. Ray,*
  409 F. App'x 641 (4th Cir. 2011) ................................................ 42

*Speaks v. South Carolina,*
  No. 6:20-CV-0780-BHH-JDA, 2020 WL 1815857
  (D.S.C. Feb. 27, 2020) ................................................................. 27

*State v. Lopez,*
  176 N.C. App. 538, 626 S.E.2d. 736 (2006) ................................. 27

*Stevenson v. City of Seat Pleasant,*
  743 F.3d 411 (4th Cir. 2014) ....................................................... 47

*Swagler v. Sheridan,*
  No. RDB–08–2289, 2011 WL 2635937
  (D. Md. July 5, 2011) ................................................................... 43

*Swanson v. Powers*,
   37 F.2d 965 (4th Cir. 1991) ........................................... 19

*Tarashuk v. Orangeburg Cnty.*,
   No. 5:19-CV-02495-JMC, 2022 WL 969749
   (D.S.C. Mar. 30, 2022), *appeal dismissed sub nom.*
   *Tarashuk v. Doroski*, No. 22-1470, 2023 WL 6567883
   (4th Cir. Oct. 10, 2023) .................................................. 42

*Taylor v. Waters*,
   81 F.3d 429 (4th Cir. 1996) ..................................... 23, 26

*Thomas v. Holly*,
   533 F. App'x 208 (4th Cir. 2013) ................................... 47

*Torchinsky v. Siwinski*,
   942 F.2d 257 (4th Cir. 1991) ............................. 29, 31, 35

*Townes v. City of New York*,
   176 F.3d 138 (2nd Cir. 1999) ........................................ 25

*U.S. v. Al-Talib*,
   55 F.3d 923 (4th Cir. 1995) ..................................... 22, 26

*U.S. v. Colkley*,
   899 F.2d 297 (4th Cir. 1990) ......................................... 24

*United States ex rel. Citynet, LLC v. Gianato*,
   962 F.3d 154 (4th Cir. 2020) ......................................... 16

*United States v. Dickey-Bey*,
   393 F.3d 449 (4th Cir. 2004) ......................................... 23

*United States v. Gray*,
   137 F.3d 765 (4th Cir. 1998) ..................................... 23, 25

*United States v. Humphries*,
   372 F.3d 653 (4th Cir. 2004) ......................................... 24

*United States v. Lanier,*
    520 U.S. 259, 117 S. Ct. 1219 (1997) ............................................ 20

*United States v. McNeal,*
    818 F.3d 141 (4th Cir. 2016) ....................................................... 28

*Wadkins v. Arnold,*
    214 F.3d 535 (4th Cir. 2000) ................................................. 29, 31

*Wernert v. Green,*
    419 F. App'x 337 (4th Cir. 2011) ................................................. 17

*White v. City of Greensboro,*
    608 F. Supp. 3d 248 (M.D.N.C. 2022) ........................................ 25

*White v. Pauly,*
    580 U.S. 73, 137 S. Ct. 548 (2017) .............................................. 37

*Whitley v. Hanna,*
    726 F.3d 631 (5th Cir. 2013) ................................................. 41, 42

*Williams v. Strickland,*
    917 F.3d 763 (4th Cir. 2019) ................................................. 17, 19

*Williamson v. Stirling,*
    912 F.3d 154 (4th Cir. 2018) ....................................................... 19

*Winfield v. Bass,*
    106 F.3d 525 (4th Cir. 1997) ....................................................... 15

*Xing Oian v. Kautz,*
    168 F.3d 949 (7th Cir. 1999) ....................................................... 26

*Ziglar v. Abbasi,*
    582 U.S. 120, 137 S. Ct. 1843 (2017) .......................................... 37

**Statutes**

28 U.S.C. § 1291 ................................................................. 1

42 U.S.C. § 1983 ........................................................ *passim*

N.C. Gen. Stat. § 90-95 (a)(3) ..................................... 27

**Constitutional Provisions**

U.S. Cons. amend. IV ............................................... *passim*

U.S. Const. amend. XIV .......................................... 17

## STATEMENT OF SUBJECT MATTER JURISDICTION

This Court has jurisdiction over this appeal by Defendants-Appellants Harry B. Crow, Jr., as Administrator of the Estate of Landric Reid "Estate of Landric Reid", David Spencer in his individual capacity, Kyle Beam in his individual capacity, Josh Beam in his individual capacity, and Jimmy Williams in his individual capacity under 28 U.S.C. § 1291 because the trial court's order, which denied Defendants' motion for summary judgment asserting entitlement to qualified immunity under federal law and public official immunity under state law, is immediately appealable. *Bailey v. Kennedy*, 349 F.3d 731, 738-39 (4th Cir. 2003) (allowing review under both immunity doctrines); *Cooper v. Sheehan*, 735 F.3d 153, 157 (4th Cir. 2013) (same).

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.    Whether, under the facts as the district court viewed them, Defendants Spencer, Kyle Beam, Josh Beam, and Williams are entitled to qualified immunity on Plaintiff's claim under 42 U.S.C. § 1983 for unlawful arrest in violation of the Fourth Amendment of the United States Constitution.

2.    Whether, under the facts as the district court viewed them, Defendants Josh Beam and Williams are entitled to qualified immunity on Plaintiff's claim under 42 U.S.C. § 1983 that they failed to intervene.

3.    Whether, under the facts as the district court viewed them, Defendants Estate of Landric Reid, Spencer, Kyle Beam, Josh Beam, and Williams are entitled to public official immunity on Plaintiff's tort claims for (i) false arrest, (ii) gross negligence/ recklessness, and (iii) intentional infliction of emotional distress under North Carolina law.

## STATEMENT OF THE CASE

This case was filed in the United States District Court for the Western District of North Carolina on January 26, 2021, by Plaintiff Ray Kifer against David Scott Burroughs, David Spencer, Kyle Beam, Josh Beam, and Jimmy Williams in their individual capacities (JA11-32).  In his Complaint, Plaintiff alleged Spencer, Kyle Beam, Josh Beam, and Williams violated his constitutional rights under 42 U.S.C. § 1983 by stopping him without reasonable suspicion, fabricating evidence, and arresting him without probable cause.  *Id.*  Plaintiff also asserted state tort claims.  *Id.* Defendants asserted qualified immunity and public official immunity in their answer.  (JA50).

On October 4, 2022, an Amended Complaint was filed against Anson County, Anson County Sheriff Landric Reid in his individual and official capacities, and Burroughs, Spencer, Kyle Beam, Josh Beam, and Jimmy Williams in their individual capacities. (JA62-109). In his Amended Complaint, Plaintiff alleged Spencer, Kyle Beam, Josh Beam, and Williams violated his constitutional rights under 42 U.S.C. § 1983 by stopping him without reasonable suspicion, fabricating evidence, arresting him without probable cause, and failing to intervene when his rights were allegedly being violated. *Id.* Plaintiff alleged that Anson County was liable under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 98 S. Ct. 2018 (1978). (JA99-102). Plaintiff also asserted state law tort claims of (i) false arrest, (ii) negligence, (iii) gross negligence/recklessness, and (iv) intentional infliction of emotional distress against the Estate of Landric Reid[1], Spencer, Kyle Beam, Josh Beam, and Williams. (JA102-107). Defendants asserted qualified immunity and public official immunity in their answer. (JA141).

---

[1]    Sheriff Reid died on September 21, 2022 (JA145), and the Estate of Landric Reid was substituted as a Defendant on December 22, 2022. (JA178).

Defendants moved for summary judgment, arguing that under the facts of this case, in the light most favorable to Plaintiff, they were entitled to summary judgment based, in part, on qualified immunity. (JA179). The district court granted Defendants' motion in part. (JA1869-1893). The district court granted Defendants' motion on (i) the section 1983 fabrication of evidence claim against Spencer and Kyle Beam; (ii) the unlawful search claim against Spencer and Kyle Beam; (iii) the failure to intervene claim against Spencer and Kyle Beam; (iv) the *Monell* claim against Anson County; and (v) the negligence claim against the Estate of Landric Reid, Spencer, Kyle Beam, Josh Beam, and Williams. *Id*. The district court denied Defendants' motion for summary judgment based on qualified immunity on (i) the Section 1983 unlawful stop claim against Spencer and Kyle Beam; (ii) the Section 1983 unlawful arrest claim against Spencer, Kyle Beam, Josh Beam, and Williams; and (iii) the Section 1983 failure to intervene claim against Josh Beam and Williams. *Id*. The district court also denied Defendants' entitlement to public official immunity on Plaintiff's state law tort claims of gross negligence/ recklessness, and intentional infliction of emotional distress against the Estate of Landric Reid, Spencer, Kyle Beam, Josh Beam and Williams. *Id*.

Defendants now appeal the district court's denial of qualified immunity on Plaintiff's false arrest and failure to intervene claims, as well as the denial of public official immunity on the state tort claims. The denial of Plaintiff's Section 1983 unlawful stop claim is dependent upon factual issues which the district court correctly noted are in dispute, and therefore are not before the Court at this time. *Accord* (Doc. 19 at 2 (Defendants' response to Plaintiff's motion to dismiss appeal)).

**Statement of Facts**

As recounted by the district court, Plaintiff alleges that Defendant David Scott Burroughs, while employed by the Anson County Sheriff's Office, framed him "for a felony drug offense that he did not commit." (JA1870) (*quoting* JA62). Burroughs' plan arose after Burroughs and his girlfriend, Yajyuam Lela Vang ("Vang"), broke up and she began dating Plaintiff. (JA63, JA211). This outraged Burroughs, who was very open about his discontent. (JA65-66). Burroughs obsessed over Vang's and Plaintiff's new relationship, with his obsession becoming so concerning that Burroughs' supervisor "ordered Burroughs not to go around the area where Lela Vang lived." (JA67). Despite this command, Burroughs continued to surveil Vang and Plaintiff while Burroughs was on-duty. *Id*.

Plaintiff alleges that in March 2018, Burroughs enacted a plan to frame Plaintiff for felony drug possession. (JA1870). Burroughs began referring to Plaintiff as a "drug dealer" to others within the Sheriff's Office, though no one at the Sheriff's Office knew Plaintiff to be involved in drugs. *Id.* On March 4, 2018, Burroughs called a Sheriff's deputy, Vance Bennett, and asked Bennett if Burroughs could use his "lock-out kit," which allows someone to open a locked car. (JA68). That same day, Burroughs contacted a local Anson County resident who Burroughs knew was connected to the local drug trade and paid him to buy heroin, marijuana, and methamphetamine, along with a scale, grinder, and baggies. (JA1870). Burroughs drove to Vang's home, where Plaintiff also lived, and placed the drugs and paraphernalia in the trunk of Plaintiff's car under the tire storage compartment. *Id.*

On March 6, 2018, Burroughs contacted Tim Hutchinson, the Chief of Polkton Police Department[2], and asked Hutchinson to stop a car which was allegedly going to be driving through Polkton at midnight with drugs in it. (JA1309-1310). Hutchinson declined because the car was supposed to be coming through Polkton when Hutchinson was not working. *Id.*

---

[2]      Polkton is a town in Anson County.

Undeterred, Burroughs contacted Anson County deputy sheriff Naji Mario El-Kobersey, and asked El-Kobersey to stop Plaintiff's car. (JA1012-1013). Burroughs told El-Kobersey that a confidential informant told Burroughs that Plaintiff was driving a Toyota at a specific time and through a specific part of Anson County with drugs in it. (JA1013). Burroughs informed El-Kobersey that the driver's girlfriend was Burroughs' ex-girlfriend, Vang. (JA1014). When El-Kobersy heard this information, he knew he was not stopping the car because "[t]he whole thing don't add up" because "[h]ow do you know that much information about your ex's boyfriend that you were with not too long ago." *Id.* El-Kobersey did not attempt to stop Plaintiff because it was "obviously fishy," and instead reported the information to Defendant Jimmy Williams. (JA261). Williams and Josh Beam were the two detectives in the Anson County Sheriff's Office's narcotics department. (JA1871). Williams told El-Kobersey not to stop the car. (JA1017). Williams had no knowledge of Burroughs ever working narcotics investigations or with confidential informants, nor did he know of Plaintiff "to ever be involved in drugs or illegal activity of any kind." *Id.* Williams believed it "sounded like a 'set-up'" and told El-Kobersey not to

stop the car. *Id*. At that time, Williams did not report the issue to his supervisor or Sheriff Reid because Williams planned to talk with fellow drug detective Josh Beam in the morning and look into the tip allegedly given by Burroughs' confidential informant. *Id*.

On March 7, 2018, Anson County deputy sheriff Darius Ellison informed Josh Beam - via a note placed in Josh Beam's mailbox - that Plaintiff was transporting drugs. (JA263). The note had Plaintiff's name on it, and a description of Plaintiff's car. *Id*. Ellison received the information he wrote to Josh Beam from Burroughs, but the note did not reveal that the information came from Burroughs. (JA1871).

After talking with Williams about Ellison's note, Josh Beam called Ellison and asked him to meet at a local gas station. (JA247). At this meeting, Ellison told Josh Beam and Williams that the source for the tip was Burroughs, and he apologized for not telling them earlier. (JA248) Williams and Josh told Ellison not to stop the car, and then "pretty much thought since Ellison was given the information, that it was done." (JA265). Williams and Beam took their directive to Ellison to be an order and that "meant not to give the information out to anybody else, to try to get them to stop it or anything else." (JA253). Williams and Josh Beam

8

then went to Morven, a town in Anson County, to conduct a gang investigation into a gang called Nine Trey. (JA281). Riding with them was United States Homeland Security Officer Jose Manolito Dugger. (JA241, JA1873).

Unbeknownst to Josh Beam and Williams, Burroughs also attempted to have Defendant Kyle Beam stop Plaintiff on March 7. (JA283-284). Kyle Beam also refused to act on the "tip", though he did not alert his supervisor or the Sheriff about it. (JA1872). Persistent, Burroughs then contacted Defendant David Spencer, telling Spencer that Burroughs' confidential informant told Burroughs that a car would be coming back and forth on Ansonville-Polkton Road with drugs. (JA230-232). Burroughs provided Spencer with the specific model and plate number for Plaintiff's car, the time Plaintiff would be driving down Ansonville-Polkton Road, and where the drugs could be found in the car. *Id.* He also told Spencer that there was a strong possibility that Vang and her boyfriend would be in the car. (JA225-226). At the time, Burroughs was a corporal and Spencer's superior, so while Burroughs' information threw up "red flags" for Spencer, Spencer looked for the car because Burroughs was his superior, and "I was thinking that he was taking hisself

9

[sic] away from the situation and asking me to do it to stay away from the situation, which I thought's the right thing to do." (JA228). Spencer asked Burroughs the identity of the confidential informant who provided the information, but Burroughs did not tell him. (JA229-230).

Spencer drove to Ansonville-Polkton Road where he found Plaintiff on March 7, 2018 between 3:43 p.m- 3: 46 pm. (JA223, JA228). Spencer stopped Plaintiff for speeding and crossing the center line. (JA232).[3] Spencer called Kyle Beam to tell Beam he stopped Plaintiff, and Beam went to assist Spencer. (JA232, JA236). Beam did not arrive until after Plaintiff had exited his vehicle and consented to its search. (JA286-287).

Kyle Beam testified that he did not smell marijuana in Plaintiff's vehicle during the search. (JA1406). While conducting the consent search, Spencer smelled chemicals and marijuana in the trunk area, popped the spare tire compartment cover and found a plastic envelope with drugs- marijuana, heroin, and methamphetamine- and a debit card with Kifer's name on it. (JA233, JA320, JA1404-1405, JA1841-1852).

---

[3] The propriety of the stop is belied by genuine issues of material fact and is thus not at issue on this appeal. (Doc. 19). At Plaintiff's deposition, he initially admitted to driving over the speed limit by a few miles-per-hour, but later hedged on this admission when questioned by his counsel. *Compare* (JA295) *with* (JA312).

During the search, Plaintiff was seated in the back of Spencer's patrol car, uncuffed and with access to his cell phone, with the windows closed. (JA298-299). Upon discovery of the drugs, Spencer and Kyle Beam arrested Plaintiff. (JA300-301).

Defendants Williams and Josh Beam heard about Plaintiff's arrest over the Sheriff's Office communication system. (JA1873). Williams said "Oh, shit" when the arrest came across the radio. *Id*. Dugger, Williams and Josh Beam then headed to the scene. *Id*. When they arrived, Plaintiff was already arrested and the vehicle search completed. (JA270). Spencer explained to Williams and Josh Beam what happened, including the drugs he and Kyle Beam found in the trunk. *Id*. Plaintiff was then transported to the station for additional questioning. (JA1872).

At the station, Agent Dugger led Plaintiff's questioning and Williams and Josh Beam were each minimally involved. (JA1465-1518). Plaintiff denied any involvement in drug activity and suggested he might have been set up by Burroughs. (JA1490, JA1497). When Dugger confronted Plaintiff with the drugs found in his trunk, Plaintiff repeated his denial and said he did not even know what the items in the bag were used for, or what they were. (JA1476-1480). Josh Beam told Dugger that

the source of the information for the vehicle stop was Burroughs, and then Josh Beam went upstairs to tell Sheriff Reid about the matter. (JA1871). After being updated, Sheriff Reid ordered Plaintiff to be released and have Plaintiff "taken in front of a magistrate and have him unarrested." (JA318).

At 5:39 pm, Williams, Dugger, and Kifer left the interview room and went to the magistrate's office. (JA256). Josh Beam then told Spencer that they needed to release Kifer. (JB278). Spencer then informed Anson County Magistrate Joshua Leviner what happened and Spencer informed Magistrate Laviner that he didn't "feel comfortable moving on with formal charges at this time." (JA238). As a result, Magistrate Leviner found no probable cause on the drug charge. (JA224). Sheriff Reid also ordered that Kifer's traffic citation for going left of center dismissed, and Kifer was never charged with anything related to this case. (JA307-308, JA318). Plaintiff was then released, and informed that his charges were being dismissed. (JA1874). The Sheriff's Office also covered the cost of his impound, and Plaintiff's sister came to get his car. (JA307).

Sheriff Reid immediately began an internal investigation, during which Burroughs lied about his involvement. (JA1874). Burroughs eventually confessed to Williams, Josh Beam, and the Anson County Sheriff's office Lieutenant Brian Tice that he planted the drugs, though he lied again about the specific details. (JA319). On March 8, Sheriff Reid fired Burroughs, arrested him, and charged him with making a false police report, obstructing justice, and breaking and entering a motor vehicle, as well as possession of heroin, marijuana, and methamphetamine. (JA320, JA1841-1852). Sheriff Reid also turned the criminal investigation over to the State Bureau of Investigation ("SBI"). (JA319). The SBI later told Plaintiff it was Burroughs who planted the drugs in his car. (JA1874).

Burroughs was eventually convicted in state court of obstruction of justice and possession of heroin. (JA1841-1842).

## SUMMARY OF ARGUMENT

Under the facts as the district court viewed them, Defendants Spencer, Williams, and Kyle and Josh Beam are entitled to qualified immunity. Defendants appeal only from the district court's legal determination that they are not entitled to qualified immunity.

Therefore, as it addresses a purely legal issue, this Court has jurisdiction.

First, given the facts known to Defendants, there was probable cause to arrest Plaintiff based on the discovery of drugs in his trunk pursuant to a consent search. Consequently, Defendants' actions did not violate the Fourth Amendment. Equipped with only their own speculation but simultaneously faced with the discovery of heroin, methamphetamine, and paraphernalia in Plaintiff's trunk, Defendants could not know that arresting and questioning Plaintiff would violate his constitutional rights, nor were Williams or Josh Beam aware that under the circumstances, they needed to do *more* than they already did to prevent Plaintiff from being arrested for the drugs planted in his car by Burroughs.

However, even assuming arguendo that the facts could establish a constitutional violation by Defendants, they are nevertheless entitled to qualified immunity. It was not clearly established that Defendants' actions, in the specific circumstances of this case, violated the Constitution. Assuming arguendo that probable cause did not exist, Defendants are entitled to qualified immunity because at a minimum, arguable probable cause existed, since a reasonable officer could have

14

believed that probable cause existed for Plaintiff's arrest. It was also not clearly established, in the specific circumstances of this case, that Josh Beam's and Williams' failure to intervene, violated the Constitution. Thus, Defendants are entitled to qualified immunity.

For these same reasons, Defendants are also entitled to public official immunity on Plaintiff's state tort claims as those claims rise and fall with Defendants' entitlement to qualified immunity.

## STANDARD OF REVIEW

The Court reviews denial of qualified immunity *de novo*. *Halcomb v. Ravenell*, 992 F.3d 316, 319 (4th Cir. 2021).

"At the summary judgment stage, we take care to ensure all disputed facts and reasonable inferences are viewed in the light most favorable to the plaintiffs." *Calloway v. Lokey*, 948 F.3d 194, 201 (4th Cir. 2020). Given the interlocutory nature of the instant appeal, the Court accepts the facts as the district court viewed them. *Winfield v. Bass*, 106 F.3d 525, 530 (4th Cir. 1997) (en banc). If, after review of the facts as the district court viewed them, Plaintiff's right to be free from arrest under the particular facts of this case was not clearly established, then Defendants are entitled to qualified immunity. *Id.*

## ARGUMENT

## I.   THIS COURT HAS JURISDICTION OVER THIS APPEAL

As an initial matter, and as set forth more fully in Defendants' response in opposition to Plaintiff's motion to dismiss, (Doc. 19), this Court has jurisdiction over this appeal. Under the collateral order doctrine, this Court has jurisdiction over interlocutory orders that should be treated as final. *United States ex rel. Citynet, LLC v. Gianato*, 962 F.3d 154, 158 (4th Cir. 2020) *(*quotation omitted). Qualified immunity "is an immunity from suit rather than a mere defense to liability; and . . . it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 2815 (1985). Thus, "[t]he collateral order doctrine has long been held to provide a basis for appellate jurisdiction over orders refusing to dismiss § 1983 claims against officials claiming sovereign or qualified immunity from suit." *Adams v. Ferguson*, 884 F.3d 219, 224 (2018) (citations omitted).

Accordingly, "[the Court's] review of the district court's judgment is 'limited to [one] narrow *legal* question: if we take the facts as the district court gives them to us, and we view those facts in the light most favorable to the plaintiff,' are the defendant officers 'still entitled to qualified

immunity?'" *Hicks v. Ferreyra*, 965 F.3d 302, 309 (4th Cir. 2020) (quoting *Williams v. Strickland*, 917 F.3d 763, 768 (4th Cir. 2019) (emphasis added).

"The question of whether a right is clearly established is a question of law for the court to decide." *Ray v. Roane*, 948 F.3d 222, 228 (4th Cir. 2020) (citing *Pritchett v. Alford*, 973 F.2d 307, 312 (4th Cir. 1992)). That is the precise basis of Defendants' appeal—that Plaintiff's Fourth and Fourteenth Amendment[4] rights were not "clearly established" under any interpretation of the facts, including the district court's. Indeed, the Court consistently asserts jurisdiction over appeals challenging whether constitutional rights were "clearly established" at the time of an alleged harm. *See, e.g.*, *Wernert v. Green*, 419 F. App'x 337, 339 (4th Cir. 2011); *Jackson v. Holley*, 666 F. App'x 242, 243 (4th Cir. 2016); *McVey v. Stacy*, 157 F.3d 271, 276 (4th Cir. 1998). Therefore, because Defendants challenge only the legal issue of whether they are entitled to qualified immunity, and not any factual issues, the Court has jurisdiction over this interlocutory appeal.

---

[4]    Plaintiff couches the violation of his rights as violative of both the Fourth and Fourteenth Amendments.  (JA95-98).

II. **DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY BECAUSE THEIR ACTIONS DID NOT VIOLATE THE FOURTH OR FOURTEENTH AMENDMENTS, OR ALTERNATIVELY BECAUSE REASONABLE OFFICERS IN THE SAME CIRCUMSTANCES COULD HAVE BELIEVED THAT THEIR ACTIONS WERE LAWFUL**

A. **OVERVIEW OF QUALIFIED IMMUNITY**

A court required to rule upon the qualified immunity issue should first consider this threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts ... show [that] the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156 (2001). Plaintiff bears the burden of proving that a constitutional violation occurred. *See Henry v. Purnell*, 501 F.3d 374, 377-8 (4th Cir. 2007). *See also Crawford-El v. Britton*, 523 U.S. 574, 588-589, 118 S. Ct. 1584, 1592 (1998) (in cases involving the qualified immunity analysis, plaintiff has the "burden of proving a constitutional violation"). If, in the light most favorable to Plaintiff, there has been no constitutional violation, then the analysis ends: the officer is entitled to qualified immunity. *Saucier, supra.*

However, if the facts could establish a constitutional violation, the Court must analyze whether the constitutional right alleged to have been violated was "clearly established" at the time of the officer's actions. *Id.*

18

In considering this second prong of the Saucier framework, the key issue is whether the law "gave the officials 'fair warning' that their conduct was unconstitutional." *Ridpath v. Board of Governors Marshall Univ.*, 447 F.3d 292, 313 (4th Cir. 2006). In conducting this inquiry, the court must "ask whether, when the defendants violated the right, there existed either controlling authority (such as a published opinion of [the Fourth Circuit]) or a robust consensus of persuasive authority that would have given the defendants fair warning that their conduct, under the circumstances, was wrongful." *Williams v. Strickland*, 917 F.3d 763, 769 (4th Cir. 2019) (*quoting Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 544 (4th Cir. 2017); *Williamson v. Stirling*, 912 F.3d 154, 187 (4th Cir. 2018)) (internal quotation marks omitted).

For the right to have been clearly established, "existing precedent must have placed the...constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 740, 131 S. Ct. 2074, 2083 (2011). "[T]he 'contours of the right' must have been so conclusively drawn as to leave no doubt that the challenged action was unconstitutional." *Swanson v. Powers*, 937 F.2d 965, 969 (4th Cir. 1991), *quoting Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039 (1987). Thus, the inquiry into

whether the right was clearly established must "be undertaken in light of the specific context of the case" and "not as a broad general proposition...." *Saucier, supra.*

The doctrine of qualified immunity "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 815 (2009). Importantly, the doctrine recognizes that officers "are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving[,]" and must "avoid judging the officers' conduct with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 397, 109 S. Ct. 1865, 1872 (internal quotation marks omitted). "[T]he qualified immunity test is simply the adaptation of the fair warning standard to give officials... the same protection from civil liability and its consequences that individuals have traditionally possessed in the face of vague criminal statutes." *United States v. Lanier*, 520 U.S. 259, 270-71, 117 S. Ct. 1219, 1227 (1997). In other words, officers are entitled to qualified immunity "if a reasonable officer

possessing the same information could have believed that his conduct was lawful." *Slattery v. Rizzo*, 939 F.2d 213, 216 (4h Cir. 1991) (emphasis added). The "safe harbor" of qualified immunity "ensures that officers will not be liable for 'bad guesses in gray areas' but only for 'transgressing bright lines.' " *Doe v. Broderick*, 225 F.3d 440, 453 (4th Cir. 2000) (citations omitted). Thus, an officer will be entitled to qualified immunity unless "every reasonable official would have understood that what he [was] doing" violated the Constitution. *Ashcroft v. al-Kidd*, 563 U.S. at 731, 131 S. Ct. at 2083*, quoting Anderson*, 483 U.S. at 640, 107 S. Ct. at 3039.

As shown at length by the argument below, Defendants are entitled to qualified immunity. First, they did not violate Plaintiff's constitutional rights. However, even assuming arguendo that the Plaintiff's constitutional rights were violated, officers in the same circumstances could have believed that their conduct was lawful. Thus, Defendants are entitled to qualified immunity.

**B.** **PLAINTIFF'S SECTION 1983 UNLAWFUL ARREST CLAIM FAILS BECAUSE DEFENDANTS HAD PROBABLE CAUSE TO ARREST PLAINTIFF.**

The district court denied qualified immunity to Spencer, Kyle Beam, Josh Beam, and Williams on Plaintiff's unlawful arrest claim arising under 42 U.S.C. § 1983. This was in error.

The Fourth Amendment is not violated by an arrest based on probable cause. *Graham*, 490 U.S. at 396, 109 S. Ct. at 1872 (1989). Probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity. Probable cause is not a high bar." *District of Columbia v. Wesby*, 583 U.S. 48, 57, 138 S. Ct. 577, 586 (2018) (internal citations and quotations omitted). It is a "commonsense, nontechnical" concept that deals "with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Ornelas v. United States*, 517 U.S. 690, 695, 116 S. Ct. 1657, 1661 (1996) (internal citations omitted).

To determine whether probable cause exists, courts look to the totality of the circumstances available to the officer at the time of arrest. *U.S. v. Al-Talib*, 55 F.3d 923, 931 (4th Cir. 1995). "Probable cause exists when the facts and circumstances known to the officer 'would warrant

22

the belief of a prudent person that the arrestee had committed or was committing an offense.'" *Taylor v. Waters*, 81 F.3d 429, 434 (4th Cir. 1996) (internal citations omitted). "While probable cause requires more than bare suspicion, it requires less than that evidence necessary to convict." *United States v. Gray*, 137 F.3d 765, 769 (4th Cir. 1998) (internal quotation marks omitted).

The circumstances encountered by law enforcement officers are weighed "not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." *United States v. Dickey-Bey*, 393 F.3d 449, 453 (4th Cir. 2004) (citations omitted). Under this "pragmatic, common sense approach," courts "defer to the expertise and experience of law enforcement officers...." *Dickey-Bey, supra.*

Probable cause "is a fluid concept that turns on the assessment of probabilities, not on any formula such as is applied to proof at trial." *Dickey-Bey*, 393 F.3d at 454 (internal citations omitted). Thus, probable cause requires substantially less evidence than is necessary to convict. *See, e.g., Porterfield v. Lott,* 156 F.3d 563, 569 (4th Cir. 1998). Indeed, the Fourth Circuit has specifically rejected the argument that "probable cause means more likely than not, [more than] 50/50," and made it clear

that "the probable-cause standard does not require that the officer's belief be more likely true than false." *United States v. Humphries*, 372 F.3d 653, 660 (4th Cir. 2004) (emphasis added). Therefore, a reasonable officer may have probable cause to believe that a suspect has committed a crime even if the officer's belief is not more likely true than false.

"Probable cause determinations are ... preliminary and tentative." *Acosta v. Ames Department Stores, Inc.*, 386 F.3d 5, 11 (1st Cir. 2004) . Since probable cause does not even require a showing that the guilt is more probable than not, the probable cause stage is obviously not the stage where the ultimate question of guilt or innocence is determined. Instead, the determination of a suspect's guilt or innocence is reserved for trial, where it is placed in the hands of the judge and the jury. *See, e.g, Baker v. McCollan*, 443 U.S. 137, 146, 99 S. Ct. 2689, 2695 (1979). *See also U.S. v. Colkley*, 899 F.2d 297, 302 (4th Cir. 1990) ("It is at trial that the accused is cloaked with the presumption of innocence....By contrast, the probable cause determination... involves no definitive adjudication of innocence or guilt."). Thus, it is irrelevant to the probable cause analysis whether, like this case, the suspect's charges are dismissed. *See, e.g., Michigan v. DeFillippo*, 443 U.S. 31, 36, 99 S. Ct. 2627, 2631 (1979).

Whether probable cause exists, under a particular set of facts, is a question of law. *See, e.g., Park v. Shiflett*, 250 F.3d 843, 849-50 (4th Cir. 2001) ("[w]hether given facts constitute probable cause is a legal determination which is reviewed de novo"), *citing United States v. Gray*, 137 F.3d 765, 770 (4th Cir. 1998). *See also Brown v. Gilmore*, 278 F.3d 362, 367 n. 2 and 368 (4th Cir. 2002) (holding that the appeal presented questions of law, and that probable cause existed to arrest plaintiff as a matter of law).

## 1.  DAVID SPENCER AND KYLE BEAM HAD PROBABLE CAUSE TO ARREST PLAINTIFF.

Probable cause for Plaintiff's arrest existed at the point Spencer and Kyle Beam found drugs in a car Plaintiff was driving with his identification lying next to it.[5]  In determining whether probable cause

---

[5]    The district court correctly observed that, to the extent the stop, itself, was unlawful, the subsequent arrest is not fruit of the poisonous tree. (JA1881-1882).  "The lack of probable cause to stop and search does not vitiate the probable cause to arrest, because (among other reasons) the fruit of the poisonous tree doctrine is not available to assist a § 1983 claimant." *Townes v. City of New York*, 176 F.3d 138, 149 (2nd Cir. 1999); *accord, e.g.*, *White v. City of Greensboro*, 608 F. Supp. 3d 248, 264 (M.D.N.C. 2022) ("White fails to identify, and the court is unaware of, any Fourth Circuit decision that has held that the fruit of the poisonous tree doctrine applies in a § 1983 claim. On the contrary, the Fourth Circuit has affirmed district court opinions that have held otherwise." (collecting cases)).

exists, courts limit their consideration to the facts and circumstances "known to the officer at the time of the arrest." *Taylor*, 81 F.3d at 434. *See also, e.g., Gomez v. Atkins*, 296 F.3d 253, 262 (4th Cir. 2002) ("In assessing whether probable cause existed when the murder warrant...was issued, we must examine the totality of the circumstances known to the officer at the time of the arrest"); *Al-Talib*, 55 F.3d at 931 ("To determine whether probable cause existed, courts look to the totality of the circumstances known to the officers at the time of the arrest").

Because the existence of probable cause is determined solely by reference to the facts and circumstances known to the officer at the time of the arrest, it necessarily follows that evidence which was unknown to the officer at the time of the arrest is totally irrelevant to the determination of whether probable cause existed to arrest the suspect. *See, e.g, Xing Oian v. Kautz*, 168 F.3d 949, 953-54 (7th Cir. 1999); *Reynolds v. Jamison*, 488 F.3d 756, 765 (7th Cir. 2007).

At the time drugs were found in Plaintiff's car, Kyle Beam and Spencer knew that (i) Plaintiff was driving a car; (ii) the car had drugs in the trunk; and (iii) Plaintiff's identification was next to the drugs.  They did not know that Burroughs invented this whole ruse for the purpose of

seeking revenge on his ex-girlfriend's new boy-friend. They also had no knowledge that Burroughs earlier contacted Tim Hutchinson, Naji Mario El-Kobersey, or Ellison prior to contacting them. Their discovery of drugs in a car Plaintiff was driving would lead any prudent officer to find that Plaintiff unlawfully possessed drugs. *See* N.C. Gen. Stat. § 90-95 (a)(3) ("it is unlawful for any person . . . to possess a controlled substance."); *see also State v. Lopez*, 176 N.C. App. 538, 541, 626 S.E.2d. 736, 739 (2006) ("where such materials are found on the premises under the control of an accused, this fact, in and of itself, gives rise to an inference of knowledge and possession which may be sufficient to carry the case to the jury on a charge of unlawful possession."). Indeed, it is axiomatic that locating drugs during a vehicle stop creates sufficient probable cause to arrest. *See, e.g.*, *Speaks v. South Carolina*, No. 6:20-CV-0780-BHH-JDA, 2020 WL 1815857, at *4 (D.S.C. Feb. 27, 2020) ("Further, once the officers found drugs during their search, they had probable cause to arrest Plaintiff." (citations omitted)), *report and recommendation adopted sub nom.*, No. CV 6:20-780-BHH, 2020 WL 1814050 (D.S.C. Apr. 9, 2020).

Whether Plaintiff believes that better alternatives were available is of no moment. The determination of the reasonableness of the officer's

decision is filtered not through the Plaintiff's mind, but through the "the lens of the officer's perceptions at the time of the incident in question." *Rowland v. Perry*, 41 F.3d. 167, 173 (4th Cir. 1994) (internal citations omitted). Certainly, any reasonable officer when confronted with this situation would have chosen the same path as Spencer and Kyle Beam. Upon discovering drugs in Plaintiff's car, and his identification next to the drugs, Spencer and Kyle Beam were confronted with the following options: (1) let Plaintiff go with drugs in the car; (2) perform an internal investigation on the side of the road to determine who possessed the drugs, while leaving Plaintiff in the car; or (3) arrest him. They chose to arrest him and they cannot be held liable for making a decision that- now with the benefit of hindsight was wrong- but only for "transgressing bright lines." *Anderson*, 483 U.S. at 639-640.

Finally, the "red flags" raised by Burroughs' earlier attempt to contact Spencer and Kyle Beam and stop the car does not invalidate the decision to arrest under the circumstances. It is well-established that an officer is not required to "exhaust every potential avenue of investigation" before an arrest. *United States v. McNeal*, 818 F.3d 141, 151 (4th Cir. 2016); *McKinney v. Richland Cnty.*, 431 F.3d 415, 418–19 (4th Cir. 2005)

("[t]he fact that [the officer] did not conduct a more thorough investigation before seeking the arrest warrant does not negate the probable cause."); *Wadkins v. Arnold*, 214 F.3d 535, 543 (4th Cir. 2000) ("That [the investigator's] efforts could have been more thorough, or even that his actions may have been mistaken, does not mean that they were unreasonable."); *Torchinsky v. Siwinski*, 942 F.2d 257, 264 (4th Cir. 1991) ("It will, of course, always be possible to contend in court that an arresting officer might have gathered more evidence, but judges cannot pursue all the steps a police officer might have taken that might have shaken his belief in the existence of probable cause.").

As a result, there was no constitutional violation because Spencer and Kyle Beam had probable cause to arrest Plaintiff.

### 2. JOSH BEAM AND JIMMY WILLIAMS HAD PROBABLE CAUSE TO TRANSPORT PLAINTIFF TO THE STATION AND INTERVIEW HIM.

With respect to Josh Beam and Jimmy Williams, who arrived after the arrest had already been made, they had sufficient probable cause to "continue[] to effectuate the arrest" by transporting Plaintiff to the station for questioning and thereafter interviewing him. (JA1883).

First, Williams and Josh Beam spoke with Spencer when they arrived, and based on that information, transported Plaintiff to the station for questioning. (JA270). They were entitled to rely on the information they received in deciding to take Plaintiff in for an interview. *See, e.g.*, *Holmes v. Village of Hoffman Estates*, 511 F.3d 673, 680 (7th Cir. 2007) ("In making a decision to arrest someone for criminal conduct that he did not witness, a police officer may rely on information provided to him by the victim or by an eyewitness to the crime that the officer reasonably believes is telling the truth. . . . Fellow law enforcement personnel are among the witnesses whose accounts the arresting officer may rely upon.").

Josh Beam and Williams were also entitled to rely on Spencer and Kyle Beam's probable cause determination. Like Williams and Josh Beam, "when an assisting officer arrives late to the scene and has no personal knowledge of the arresting officer's basis for the arrest, liability does not turn on whether the arrest was actually based on probable cause." *Fernandes v. Montgomery Cnty.*, No. 10-cv-752, 2012 WL 1664086, at *3 (D. Md. May 10, 2012) (granting qualified immunity).

Second (and practically), as narcotics detectives, "once the drugs were located, we were not just gonna just sort of dismiss this." (JA271). That they had doubts about the veracity of the initial tip does not negate the probable cause created once drugs were, in fact, found Plaintiff's vehicle. *Accord* (JA271). Indeed, reasonable officers need not "resolve every doubt about a suspect's guilt before probable cause is established." *Torchinsky*, 942 F.2d at 264 (citation omitted); *accord* (JA456) (Williams explaining that he did not have enough information to conclusively belief or disbelieve the information given by Burroughs)). While officers "may not disregard readily available exculpatory evidence . . . the failure to pursue a potentially exculpatory lead is not sufficient to negate probable cause." *Wadkins*, 214 F.3d at 541. For Josh Beam and Jimmy Williams, it was reasonable to continue the investigation and take Plaintiff to the station for an interview because "even though the information was -- seemed too good to be true, it was still a possibility that could have been credible information." (JA271).

What is more, after Josh Beam, Williams, and Agent Dugger spoke with Plaintiff at the station, they not only released him but recommended that the situation be investigated. It is plainly obvious that once they

obtained "readily available exculpatory evidence"—speaking directly with Plaintiff, as opposed to second- and third-hand information like they had prior to transporting him to the station—they heeded it, released him, and took steps to rectify whatever concerns arose or were confirmed by Plaintiff's interview.

Defendants' conduct need not be perfect, just reasonable. And under these circumstances, it was.

C. **ASSUMING ARGUENDO THAT PLAINTIFF'S CONSTITUTIONAL RIGHTS WERE VIOLATED. THE INDIVIDUAL DEFENDANTS ARE NEVERTHELESS ENTITLED TO QUALIFIED IMMUNITY BECAUSE IT WOULD NOT HAVE BEEN CLEAR TO A REASONABLE OFFICER THAT THE DEFENDANTS' CONDUCT WAS UNLAWFUL**

1. **DEFENDANTS HAD AT LEAST ARGUABLE PROBABLE CAUSE TO ARREST PLAINTIFF.**

Assuming arguendo that Plaintiff's constitutional rights were violated, *Saucier* instructs that a court must proceed to the second step of the qualified immunity analysis. *Saucier*, 533 U.S. at 201, 121 S. Ct. at 2156. In the instant case, the relevant inquiry is whether a reasonable officer possessing the same information as the officers could have believed that probable cause existed. As the Supreme Court instructed in *Malley v. Briggs*, an officer is entitled to qualified immunity if "officers

of reasonable competence could disagree" on the issue of probable cause. 475 U.S. 335, 341, 346 n.9, 106 S. Ct. 1092, 1098 n. 9 (1988). *See also Porterfield*, 156 F.3d at 568 (4th Cir. 1998) (holding that officers are entitled to qualified immunity unless the officers "were plainly incompetent or knowingly violated the Fourth Amendment" in seeking a warrant and arresting the plaintiff). If arguable probable cause exists - even if actual probable cause is not present - the officer will be entitled to qualified immunity. *See, e.g., Keil v. Triveline*, 661 F.3d 981, 986-87 (8th Cir. 2011) (Officers were entitled to qualified immunity where the officers had "arguable probable cause"); *Holmes v. Kucynda*, 321 F.3d 1069, 1079 (11th Cir. 2003) ("To receive qualified immunity protection, an officer need not have actual probable cause but only arguable probable cause."); *Humphrey v. Staszak*, 148 F.3d 719, 725 (7th Cir. 1998) (If the officers had "arguable probable cause," they are entitled to qualified immunity even if they did not have actual probable cause).

For qualified immunity purposes, the question then, is "whether [Defendants] could reasonably have believed there was probable cause for an arrest." *Gomez v. Atkins*, 296 F.3d 253, 261 (4th Cir. 2002). Arguable probable cause exists even where an officer mistakenly arrests

33

a suspect believing it is based in probable cause if the mistake is objectively reasonable. *Orem v. Gilmore*, 813 Fed. App'x 90, 92 (4th Cir. 2020). In this case, assuming arguendo that probable cause did not exist, Defendants are nevertheless entitled to qualified immunity, because it is clear - at a minimum - that arguable probable cause existed.

Here, Defendants reasonably believed there was probable cause. First, as discussed above, Spencer and Kyle Beam personally discovered drugs in the vehicle, which gave them probable cause, even in light of their preconceived questions about the information from Burroughs. Williams and Josh Beam were entitled to rely on that determination. Second, given the discovery, the personal identification lying next to it, the limited information available to all the officers, and the reality that there "was still a possibility that could have been credible information," (JA271). Defendants acted reasonably under the circumstances in completing an arrest, diligently pursuing further investigation, and releasing Plaintiff as soon as it was clear they "didn't think Ray was the one [they] needed to be investigating." (JA318). "But even if it is assumed that the existence of probable cause to arrest . . . is a 'close call' on the present record, this is exactly the point of the qualified immunity

defense." *Martin v. Mendoza*, 230 F. Supp. 2d 665, 671 (D. Md. 2002). It is certainly possible that a reasonably competent officer would have concluded that he, too, had probable cause to arrest and interview Plaintiff under these circumstances. And on this record, it is also possible that another may disagree. By definition, this is arguable probable cause. *Accord Torchinsky*, 942 F.2d 257, 261 (4th Cir. 1991) ("The very idea of reasonableness requires that courts accord interpretive latitude to official judgments."). Thus, even if they did not have actual probable cause, Defendants had arguable probable cause and are entitled to qualified immunity.

### 2. DEFENDANTS DID NOT VIOLATE CLEARLY ESTABLISHED LAW

In determining entitlement to qualified immunity, the district court must analyze whether a constitutional violation occurred, and if it did, whether the law at the time clearly established Plaintiff's constitutional right under the circumstances. *Pearson*, 555 U.S. at 231, 129 S. Ct. at 815. However, the trial court never addressed the "clearly established" prong. The trial court stated that "a determination of qualified immunity cannot be made at this time…The jury will have to determine whether a constitutional violation occurred- that is, whether Kifer was arrested

35

without probable cause- before the qualified immunity issue can be decided." (JA1884)

The trial court's failure to analyze this prong was in error. In other words, even if Plaintiff's constitutional rights were violated, the trial court was still required to determine whether Defendants violated Plaintiff's clearly established rights. Whether a right is clearly established is dependent upon decisions of the Supreme Court and the Fourth Circuit that provide officers "fair warning, with sufficient specificity, that their actions would constitute a deprivation of an individual's constitutional rights." *Betton v. Belue*, 942 F.3d 184, 193–94 (4th Cir. 2019). Importantly, "[w]hen categorizing like cases, we must take care to carve at the joints. For, as noted, qualified immunity kicks in 'unless existing precedent "squarely governs" the specific facts at issue.'" *Kisela v. Hughes*, 584 U.S. --, 138 S. Ct. 1148, 1153 (2018) (per curiam) (*quoting Mullenix v. Luna*, 577 U.S. 7, 13, 136 S. Ct. 305, 309 (2015).

This is particularly important in the Fourth Amendment context. In the Fourth Amendment context, the "specificity" of the rule is "especially important," *Mullenix*, 577 U.S. at 12, 136 S. Ct. at 308,

because officers will often find it difficult to know how the general standard of probable cause applies in "the precise situation encountered." *Ziglar v. Abbasi*, 582 U.S. 120, 151-152, 137 S. Ct. 1843, 1866, (2017). Thus, courts have stressed the need to "identify a case where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment." *White v. Pauly*, 580 U.S. 73, 137 S. Ct. 548 (2017) (per curiam). Existing precedent must place the lawfulness of the officers' conduct "beyond debate." *Ashcroft*, 563 U.S. 731, 741 (2011); *accord Anderson v. Creighton*, 483 U.S. 635, 640 (1987) ("in the light of pre-existing law," the unlawfulness of the officer's conduct "must be apparent.").

The district court even acknowledged that "taking into account all of the facts and circumstances," this case is not "straightforward." (JA1883). This is the essence of a "clearly established" analysis, which the trial court failed to conduct. For Defendants Spencer and Kyle Beam, it was not clearly established in the Fourth Circuit that upon encountering illegal drugs and paraphernalia in Plaintiff's trunk, arresting Plaintiff for those drugs would violate his rights. With respect to Josh Beam and Williams, based on the reason for his arrest—

possession of illegal drugs and paraphernalia—and because they did not have enough foundation to believe or disbelieve the information from Burroughs that led to Plaintiff's stop and arrest, they transported Plaintiff to the station for questioning.  That interview was led by federal agent Dugger and they were each minimally involved.  (JA306).  During the interview, after more information had been gathered, Plaintiff was released.

Simply put, there are no decisions of the U.S. Supreme Court or the Fourth Circuit clearly establishing that, under these facts, Defendants would know they were violating Plaintiff's constitutional right to be free from unlawful arrest. When Spencer and Kyle Beam arrived on the scene, equipped with precious little information, they realized Plaintiff did, in fact, have drugs in his car.  While Josh Beam and Williams had more information than Spencer and Kyle Beam, they were entitled to rely on Spencer's and Kyle Beam's probable cause determination, as well as their own probable cause created by Kifer's apparent possession of the drugs, to bring Plaintiff to the station to gather more information directly from him.

38

To be sure, a right may also be clearly established based on a "robust 'consensus of cases of persuasive authority'" from other jurisdictions. *Wesby*, 583 U.S. at 63, 138 S. Ct. at 590; *Schoonover v. Clay Cnty. Sheriff's Dep't*, No. 20-1680, 2023 WL 4026091, at *4 (4th Cir. June 15, 2023)) (same). But there is no such consensus that could have put Defendants on notice that their conduct would violate Plaintiff's rights.

Regardless of their speculation as to the information that led to the stop, Kyle Beam and David Spencer found drugs in the car. This gave them probable cause to arrest. Josh Beam and Jimmy Williams, upon arriving after the arrest was made, and particularly with limited knowledge of the circumstances, were entitled to rely on that probable cause determination and to further interview Plaintiff to ascertain more information.

Accordingly, under these highly unique circumstances, it was not clearly established that Defendants' conduct would violate Plaintiff's constitutional rights.

**D. PLAINTIFF'S SECTION 1983 FAILURE TO INTERVENE CLAIM AGAINST JOSH BEAM AND JIMMY WILLIAMS SHOULD BE DISMISSED BECAUSE THERE WAS NO CONSTITUTIONAL VIOLATION.**

The district court also denied qualified immunity to Josh Beam and Jimmy Williams on Plaintiff's failure to intervene claim. As discussed above, Josh Beam and Williams had probable cause, and at the least arguable probable cause, to transport and question Plaintiff. This is fatal to Plaintiff's failure to intervene claim. *Brooks v. Johnson*, 924 F.3d 104, 112 n.3 (4th Cir. 2019) (without an underlying violation, there is no failure to intervene).

Nevertheless, because "personal liability [under Section 1983] premised on an omission is a disfavored concept," Plaintiff must demonstrate that (1) Defendants knew that Plaintiff's rights were being violated; (2) they had a reasonable opportunity to prevent the harm; and (3) they still chose not to act. *Randall v. Prince George's County*, 302 F.3d 188, 203, 204 (4th Cir. 2002). Additionally, the officer must have "specific knowledge" of the unconstitutional act on the part of the fellow officer. *Id.* at 204 n.24. If the bystander lacks such specific knowledge, he cannot be a participant in the unlawful acts, and the imposition of personal

liability is impermissible." *Burley v. Baltimore Police Dep't*, 422 F. Supp. 3d 986, 1030–31 (D. Md. 2019); *see also Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013) ("However, [bystander] liability will not attach where an officer is not present at the scene of the constitutional violation.").

First, it is apparent that neither Josh Beam nor Williams had specific knowledge that Plaintiff's rights were being violated. It is undisputed that nobody- except for David Burroughs- knew that 1) Burroughs paid a drug dealer for drugs; and 2) Burroughs planted the drugs in Plaintiff's car.

Second, and critically, neither Williams nor Josh Beam was present at the scene when Plaintiff was stopped or when he was arrested. "How the bystander liability doctrine applies to officers who are not near the vicinity of the deprivation, nor have any obvious involvement in the incident at the time the constitutional deprivation occurs, has not been directly addressed by the Fourth Circuit." *Tarashuk v. Orangeburg Cnty.*, No. 5:19-CV-02495-JMC, 2022 WL 969749, at *9 (D.S.C. Mar. 30, 2022), *appeal dismissed sub nom. Tarashuk v. Doroski*, No. 22-1470, 2023 WL 6567883 (4th Cir. Oct. 10, 2023). Nevertheless, bystander liability requires that Williams and Josh Beam knew that Plaintiff's rights were

being violated. The Fourth Circuit agrees that knowledge requires physical presence. *See, e.g.*, *Smith v. Ray*, 409 F. App'x 641, 649 (4th Cir. 2011) ("We nonetheless agree with the reasoning of the district court and magistrate judge as to the insufficiency of the bystander liability claims" because "even if the initial detention and arrest of plaintiff were unlawful, none of the officers were present and, therefore, cannot possibly have had knowledge of Ray's alleged misconduct"). Similarly, other circuits—relying on the Fourth Circuit's decision in *Randall*—have explicitly held that physical absence from the scene at the time of the alleged constitutional deprivation forecloses a claim of bystander liability. *See, e.g.*, *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013) ("[L]iability will not attach where an officer is not present at the scene of the constitutional violation."); *cf. Calvi v. Knox Cnty.*, 470 F.3d 422, 428 & n.3 (1st Cir. 2006) (an officer's "mere presence at the scene, without more, does not by some mysterious alchemy render him legally responsible under section 1983 for the actions of a fellow officer.").

Despite the district court's observation that Williams was suspicious about the stop and arrest, neither he nor Josh Beam was present when it happened, and thus did not see what Spencer saw or

what influenced his decision to arrest. A hunch or suspicion of constitutional impropriety is insufficient. *Accord, e.g.*, *Burley v. Baltimore Police Dep't*, 422 F. Supp. 3d 986, 1031 (D. Md. 2019) (agreeing that bystander liability requires "actual knowledge of the specific tort, not 'actual or constructive knowledge' of general misconduct that may have led to the violations of constitutional rights."). Other courts, including the District of Maryland within the Fourth Circuit, agree. *See, e.g.*, *Machie v. Manger*, No. 09-CV-2196-AW, 2013 WL 12246343, at *2 (D. Md. Sept. 10, 2013) ("Even if the Court accepted Plaintiff's argument that probable cause was lacking and that Pak knew or should have known it would be lacking on that basis, it would not have been clear to Pak that a constitutional violation was occurring given his lack of personal involvement in the arrest. . . . Accordingly, Pak was not in a position to clearly assess the constitutionality of Plaintiff's arrest, and nothing he saw during the arrest demonstrated that his fellow officers had acted without probable cause."); *Swagler v. Sheridan*, No. RDB–08–2289, 2011 WL 2635937, at *7–8 (D. Md. July 5, 2011) (granting summary judgment to defendants on claims of bystander liability where the defendants did not have requisite knowledge of the underlying events

43

leading up to the arrest, and where the defendants saw nothing that "clearly and unequivocally" demonstrated that their fellow officers had acted without probable cause."); *Lucky v. City of New York*, No. 03 Civ. 1983 (DLC), 2004 WL 2088557, at *7 (S.D.N.Y. Sept. 20, 2004) (finding that the claims for failure to intervene to prevent an arrest and to prevent excessive force failed where the arrest and prosecution was supported by probable cause, and the defendants were not present at the time of the alleged use of force), *aff'd*, 140 Fed. App'x 301 (2d Cir. 2005); *Hernandez v. City of Napa*, No. C-09-02782 EDL, 2010 WL 4010030, at *14 (N.D. Cal. Oct. 13, 2010).

The district court lamented that Josh Beam and Williams did not immediately notify Sheriff Reid. (JA1872-1873). But that overlooks what they did do, which was reasonable under the circumstances. Josh Beam and Williams told Ellison not to stop the car. (JA279, JA483). And they believed since they were lieutenants, "[w]e left that day believing that nobody would stop that car and we went and did our job, the other stuff we had to do, and then we were going to get -- follow up on it." (JA279-280). Their belief that this was not an emergent issue and could wait for an investigation was reasonable. The fact that another deputy

44

subordinate to Burroughs did act on the information without their knowledge does not invalidate that reasonableness, nor does their decision to transport Plaintiff to the station for an interview after drugs were, in fact, discovered in his vehicle. Indeed, this created more questions than answers—it would have been unreasonable not to find the truth at that point.[6]

Williams and Beam knew the following prior to Plaintiff being stopped by Spencer: (i) Burroughs and Vang broke up and Burroughs was upset about the break-up; (ii) Burroughs attempted to have other officers stop Plaintiff's car based upon a purported "tip"; and (iii) Burroughs was not known to have informants. (J.A. 65, 66, JA1017). Importantly, they "didn't feel like it was emergent enough, especially after telling Ellison not to pursue this matter, that we thought anybody would take action on it. No patrol officer would take action on it." (JA479). Williams planned on gathering as much information on Plaintiff as he could to find out if Plaintiff was in the drug business. (JA475). Significantly, neither Josh Beam nor Williams knew that Burroughs paid a local drug dealer for

---

[6] Josh Beam testified that he did promptly notify Sheriff Reid, during Plaintiff's interview once, he and Williams had reason to believe Plaintiff was innocent. (JA277).

drugs, broke into Plaintiff's car, and planted the drugs. This is fatal to Plaintiff's failure to intervene claim.

*Burley v. Baltimore Police Department* is almost directly on-point to this case. In *Burley*, the defendant police commissioner moved to dismiss the plaintiff's failure to intervene claim where other officers planted drugs and falsified reports against the plaintiff. 422 F. Supp. 3d. at 1030. The defendant noted that there was no allegation that he had specific knowledge that the other defendant officers planted drugs in plaintiff's vehicle or that they authored a false report concerning the incident. *Id*. at 1031. The defendant argued that "under the theory of bystander liability, "an officer must be a 'bystander' to the wrongs alleged; in other words, the officer must be an accomplice." *Id*. The district court agreed and held that that the plaintiff failed to show that the defendant was present at the relevant time and had "specific knowledge" of his subordinates' unlawful acts in this matter. *Id*.

In this case, none of the Defendants were present when Burroughs planted drugs in Plaintiff's car, and they did not have specific knowledge that Burroughs devised a scheme to plant drugs in Plaintiff's car. As a result, the duty to intervene does not attach. *See Randall*, 302 F.3d at

202 (4th Cir. 2002) ("As a general matter, a law officer may incur § 1983

liability *only* through *affirmative* misconduct." (emphasis added)).

Accordingly, no reasonable juror could conclude that Williams or

Josh Beam knew of an ongoing constitutional violation or ignored a

reasonable opportunity to prevent one. *See Stevenson v. City of Seat

Pleasant*, 743 F.3d 411, 417 (4th Cir. 2014); *see also Thomas v. Holly*, 533

F. App'x 208, 221–23 (4th Cir. 2013) (police officers who arrived on scene

after use of excessive force, or did not witness use of force, could not face

bystander liability because they possessed neither knowledge of

constitutional violation nor opportunity to prevent said violation).

## 1.   <u>DEFENDANTS DID NOT VIOLATE CLEARLY ESTABLISHED LAW</u>

The district court never addressed whether Defendant violated a

clearly established right.  The trial court stated that "a determination of

qualified immunity cannot be made at this time…The jury will have to

determine whether a constitutional violation occurred- that is, whether

Josh Beam and Williams failed to intervene to protect Kifer against

unlawful arrest."  (JA1886).

Like its failure to analyze this prong for the unlawful arrest claim

was error, so is the trial court's failure to analyze this prong for the

47

failure to intervene claim. Even if Plaintiff's constitutional rights were violated, the trial court was still required to determine whether Defendants violated Plaintiff's clearly established rights. Even had the district court analyzed whether Plaintiff's constitutional right was clearly established, the facts as recited by the district court show it was not. In simplest terms, Defendants could not know that their conduct would violate Plaintiff's rights. In fact, under the circumstances, Defendants knew very little. And that is the point.

Defendants agree with the district court—"taking into account all of the facts and circumstances," this case is not "straightforward." (JA1883). This is the essence of a "clearly established" analysis. For Defendants Williams and Josh Beam, the notice to them that they would possibly be violating his rights was even more tenuous. In simplest terms, Williams and Josh Beam already instructed other officers not to pursue Burroughs' "tip". Unbeknownst to them, Burroughs recruited another deputy subordinate to him to facilitate Burroughs' unlawful plan. Beam and Williams informed Ellison not to stop the car, and they believed since they were lieutenants, " [w]e left that day believing that

48

nobody would stop that car and we went and did our job, the other stuff we had to do, and then we were going to get- follow up on it."  (JA279).

Simply put, there are no decisions of the U.S. Supreme Court or the Fourth Circuit clearly establishing that, under these facts, Williams or Josh Beam would know they were violating Plaintiff's constitutional right for failing to intervene.

Accordingly, under these highly unique circumstances, it was not clearly established that Defendants' conduct would violate Plaintiff's constitutional rights.

## III.    DEFENDANTS ARE ENTITLED TO PUBLIC OFFICIAL IMMUNITY ON PLAINTIFF'S STATE LAW CLAIMS.

Defendants are entitled to public official immunity for Plaintiff's state law claims because their actions were not malicious, corrupt, or outside the scope of their duties.  A law enforcement officer, such as a deputy sheriff, is a public official.  *Messick v. Catawba County*, 110 N.C. App. 707, 718, 431 S.E.2d 489, 496 (1993). Under North Carolina law, public officers engaged in the exercise of discretionary, governmental duties may be held personally liable only if their actions were "corrupt or malicious."  *See, e.g., Smith v. Hefner*, 235 N.C. 1, 7, 68 S.E.2d 783, 787 (1952).  In *Grad v. Kaasa*, 312 N.C. 310, 313, 321 S.E.2d 888, 890 (1984),

the Court held that in order for a plaintiff to show "malice" and overcome a public officer's immunity, the plaintiff must show that the public officer committed an act "which a man of reasonable intelligence would know to be contrary to his duty."

This prong of the public officer's immunity test is essentially the same analysis as the "clearly established" prong of the qualified immunity test. *See, e.g., Lea v. Kriby*, 171 F. Supp. 2d 579, 584 (M.D.N.C. 2001), aff'd, 39 Fed. Appx. 901 (4th Cir. 2002). *See also Bailey v. Kennedy*, 349 F.3d 731, 742-43 (4th Cir. 2003), in which this Court equated acts which "a man of reasonable intelligence would know to be contrary to his duty" under the North Carolina public officer's analysis with acts which are "clearly established" to be in violation of the law under the federal qualified immunity analysis.

As shown by the earlier lengthy discussion demonstrating that Defendants are entitled to qualified immunity, Defendants' actions were not acts "which a man of reasonable intelligence would know to be contrary to his duty" under the circumstances. Therefore, they are entitled to public officer's immunity. *Cooper v. Sheehan,* 735 F.3d 153, 160 (4th Cir. 2013) (public official immunity is analyzed in a manner

50

similar to the claims under federal law because "analysis of public officers' immunity is functionally identical to" that of "qualified immunity with respect to . . . § 1983 claims."); *Bell v. Dawson*, 144 F.Supp.2d 454, 464 (W.D.N.C. 2001) (noting that a finding of qualified immunity is fatal to Plaintiff's state tort claims).

## CONCLUSION

For the reasons stated herein, Defendants are entitled to qualified immunity on Plaintiff's claims under 42 U.S.C. § 1983 for unlawful arrest and failure to intervene, as well as public official immunity on Plaintiff's corresponding state law tort claims.

## REQUEST FOR ORAL ARGUMENT

Counsel for the Defendants-Appellants desires oral argument.

Respectfully submitted this 2nd day of February, 2024.

s/Sean F. Perrin
s/ Mike Ingersoll
Sean Perrin, NCSB No. 22253
Mike Ingersoll, NCSB No. 52217
WOMBLE BOND DICKINSON (US) LLP
301 S. College Street, Ste. 3500
Charlotte, North Carolina 28202
Telephone: 704-331-4992
Facsimile: 704-338-7814
Sean.Perrin@wbd-us.com
Mike.Ingersoll@wbd-us.com
*Attorneys for Defendants*

## CERTIFICATE OF COMPLIANCE

1.    This document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f)(cover page disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

this document contains <u>10,191 words</u>.

2.    This document complies to the type phase requirements because: this document has been prepared in a proportional space type phase typeface using <u>Microsoft Word</u> in <u>14 point Century Schoolbook</u>.

Respectfully submitted this 2nd day of February, 2024.

<u>s/Sean F. Perrin</u>
<u>s/ Mike Ingersoll</u>
Sean Perrin, NCSB No. 22253
Mike Ingersoll, NCSB No. 52217
WOMBLE BOND DICKINSON (US) LLP
301 S. College Street, Ste. 3500
Charlotte, North Carolina  28202
Telephone:  704-331-4992
Facsimile:  704-338-7814
Sean.Perrin@wbd-us.com
Mike.Ingersoll@wbd-us.com
*Attorneys for Defendants*